HUTCHINSON a. THE NEW YORK CENTRAL MILLS.

*Supreme Court, Fifth District; General Term, January,* 1856.

INSOLVENT CORPORATIONS.—INJUNCTION.

It is not necessary that a judgment creditor of an insolvent corporation, who brings
suit for an injunction to restrain other creditors of the corporation from proceed-
ing at law, and for the appointment of a receiver, and equitable distribution of
the corporate assets, should give the bond or make the deposit prescribed by the
provision of the Revised Statutes respecting injunctions to stay proceedings at
law (2 *Rev. Stats.*, 188, § 139) in order to entitle himself to the injunction prayed.

Appeal from an order of the special term, dissolving an in-
junction.

The plaintiff in this action, Charles W. Hutchinson, was a
judgment creditor of the New York Central Mills, whose exe-
cution had been returned unsatisfied, whereupon he com-
menced this action against the corporation, its officers and
sundry other persons, among them Burton D. Hurlbut.  The
complaint charged the officers with various frauds and embez-
zlements, and among others things charged that two judg-
ments in favor of different officers, one for $35,000 and one
for $30,000, (which it was alleged had been recovered substan-
tially by confession, in contemplation of insolvency, when the
corporation was insolvent and after it had refused payment of
its notes,) were illegal as being within the prohibition of 1 *Rev.
Stats.*, 103, § 4, and were also fraudulent in fact.  The plain-
tiff's judgment was recovered after the two judgments above
mentioned, which it appeared had, since their recovery, been
assigned to the defendant Hurlbut.  The relief prayed for was
the appointment of a receiver, judgment of dissolution against
the corporation, and of distribution of its effects among its
creditors (2 *Rev. Stats.*, 462, *and onward*), that the trustees
should account, and pay such sums as they should be found
liable to pay (*Ib.*), and that the two judgments above referred
to be adjudged to be fraudulent and void.  Upon the com-

plaint and the affidavits subjoined to it, Mr. Justice Bacon granted *ex parte* a preliminary injunction restraining the officers from acting, restraining all proceedings to collect the two judgments, and also restraining all other creditors " from commencing, continuing, or carrying on any suits or proceedings in the nature of actions at law against the said corporation, or issuing any execution, process or proceeding, upon any judgment or order now obtained or hereafter to be obtained against such corporation, or levying upon, seizing, selling, or advertising, or taking any steps to levy upon, seize, sell, or advertise, or in any other way proceeding in any such actions or judgments," until the further order of the court. This injunction was granted upon an undertaking in the penalty of $3,000, executed by the plaintiff and one surety, in the form prescribed by section 222 of the Code. The defendant Burton D. Hurlburt, applied upon affidavits to Judge Brown at chambers, for a dissolution of so much of the injunction as restrained him ; and counter affidavits were produced by the plaintiff.

It appeared by the additional motion papers that Hurlburt was the assignee, not only of the two judgments named, but also of other judgments amounting to about $25,000, some of which were senior and some junior to the plaintiff's judgment; and concerning the fairness of which no question was raised. On several of these, executions had been issued, and the property of the corporation levied upon and advertised for sale ; and on one of them execution having been returned unsatisfied, he had before this suit was commenced, taken proceedings under 2 *Rev. Stats.*, 463, § 36, procured the appointment of a receiver, and also procured an injunction against creditors under 2 *Rev. Stats.*, 466, § 56, which injunction, however, it did not appear had been served.

On the hearing below, Judge Bacon held that the plaintiff in this suit was bound, in order to be entitled to his injunction, to give the bond or make the deposit specified in 2 *Rev. Stats.*, 189, 190, §§ 141, 146, which had not been done, and made an order dissolving the injunction, unless the plaintiff should give such bond or make such deposit within twenty days. From this order the plaintiff appealed.

*Montgomery H. Throop*, for appellant—after an elaborate argument in support of the equitable rights of the plaintiff to an injunction upon the merits of the case, proceeded to discuss the question whether the injunction should have been dissolved for the failure of plaintiff to give the security prescribed by the Revised Statutes.

I. The provisions of the Revised Statutes (2 *Rev. Stats.*, 188, § 139) are inapplicable to the present organization of this court. 1. The article entitled " Of the granting of injunctions to stay proceedings at law," in which they are to be found, is a part of the special provisions relative to the Court of Chancery, and nearly every section of the chapter in which it stands has been confessedly abrogated by the Code. *Cessante ratione cessat lex.* An injunction is now a mere stay of proceedings in the same court, which could always have been obtained without any security under the former practice. The transferring of the jurisdiction of the Court of Chancery to this court has impliedly repealed all statutes and rules of law based upon the existence of two courts whose jurisdiction conflict. 2. The judgment debtor cannot now in any case have an injunction to stay the collection of a judgment against him. His sole and only remedy is by motion ; which shows that the statute is repealed. (2 *Story's Eq. Jur.*, §§ 875–894 ; Dederick *a.* Hoysradt, 4 *How. Pr. R.*, 350). 3. The very language of the statute shows its inapplicability. " No injunction"—*i. e.*, no writ of injunction—" shall issue to stay proceedings at law." By the Code the writ of injunction is abolished, and an order substituted. Does not this repeal all statutes directed against the writ of injunction as contra-distinguished from an order of the court.

II. The statute is not applicable to the case of a junior judgment creditor seeking a stay of a senior judgment creditor's proceedings, but is levelled solely against a debtor who seeks to enjoin the proceedings of a creditor against himself. (Hegeman *v.* Wilson, 8 *Paige*, 29). 1. It could not have been intended that a man in no way responsible for the payment of the judgment, should be required to give bond to pay it or deposit the money as a condition to any preliminary relief against the injury its immediate collection might give him.

A bond to pay all damages, with its penalty left entirely to the discretion of the court, is all that is necessary or reasonable to ask. It is true the danger of injury to the creditor may be as great in one case as in the other, but the court will not grant the injunction unless there is probable cause for it, and the reason for the distinction is, that where the debtor applies and gives the bond or makes the deposit required by the statute, he merely gives security that he will do the very thing he is bound to do if his equity suit fails, which is substantially giving the creditor security to pay all his damages. 2. The primary object of the statute was evidently to require a deposit, the bond being a mere substitute for the latter (§ 146), and the plaintiff may take out the deposit at any time on giving security (§ 142). This is clearly predicated in the supposition that he has established a prima facie case for the collection of the money from the party who has paid it in, and shows that the legislature had only before them the case of a party liable to pay the judgment. 3. This idea is further carried out and the inapplicability of the statute made manifest by § 143. When the money is taken out, if the plaintiff in equity is unsuccessful, he has no remedy against the defendant in the suit at law, but the judgment is deemed *paid.* This provision is general, applicable to *all* cases under this article, and the omission to provide a remedy where any person other than the defendant at law has paid the money in, shows conclusively that it was never intended that any person but him should pay it in.

We do not think this argument is overthrown by the suggestions made by the court below,—*viz.,* that on the doctrine of subrogation the party will be remitted to the rights of the judgment creditor whose judgment he has stayed, and that on directing the payment to be made, the court will require as a condition that the judgment whose validity and priority of lien has been established, shall be assigned to the party who paid the amount, thus affording him protection and indemnity. Because—*First.* The very object of the statute was to take from the court its discretionary power on the subject of proceedings of this character, and to prescribe what should be done. Without permissive words contained in the statute, the

court would have no power, in a case of this kind, to require anything more than the statute requires. The plaintiff can take out his money, before any decision in the equity court, and the word "may" is used in § 142, only for the purpose of enabling the court to see that the proper security is given. Whenever the security is given and approved by the court, this word "may" will be construed to mean "shall." There is no provision in the statute which authorizes the court to require the plaintiff to do anything more than give security to pay the money back. (*Dwarris on Statutes*, 9 *Law Lib.*, 712). *Second.* The language of the statute, so far from giving the court any discretionary power, prohibits it from requiring any such condition from the plaintiff, as the one to which the learned judge refers. The court "*may*" order the plaintiff's bond, given on taking out the money, to be cancelled, but "*shall*" do one of two things, either continue the injunction, or compel the judgment to be cancelled. This imperative expression applies in all cases "whenever the money shall be paid to the plaintiff," and "the decision of the court be against the party obtaining the injunction," in which case the *only* power of the court over the judgment is to enjoin it perpetually or to compel its cancelment. The use of this imperative word "shall" shows that the idea was never entertained that the complainant in the equity suit who has paid his money into court could possibly desire any other relief after decree against him than a cancelment of the judgment at law. *Third.* The argument is no answer to ours. It would answer us if we claimed that the court should disregard the statute because the construction contended for would work injustice, but our claim is that this omission in the statute, shows that the statute never contemplated such a case as this, although its language is general. To say that the court will supply the omissions of the statute, assumes our argument, that we are omitted, to be a sound one.

4. Unless the general language of this statute be restricted, the court can never give effect to the provisions of 2 *Rev. Stats.*, 466, § 56, but that section must be considered as practically stricken from the statute book. Granting that that section does not contemplate a stay of proceedings after judgment

(which we deny, as its language is general), it is clear that it *does* contemplate an injunction to stay actions after issue joined, and even after verdict. The article under consideration requires the same bond, or a deposit, in all cases where proceedings are stayed at law, after issue, after verdict, or after judgment. If the construction we contend for is not a correct one, not only is a creditor of an insolvent corporation compelled to make a deposit or give a bond to pay all its debts before he can obtain the general injunction provided for by § 56, but the attorney general (§ 40) or a receiver, must give the same bond.

III. But conceding all that is claimed upon the construction of this statute, the charges made in the complaint and established by the affidavits annexed to it, were such that the judge, in originally granting the injunction, properly dispensed with the bond or deposit, as the papers before him showed that the judgments were obtained by actual fraud within § 147, (2 *Rev. Stats.*, 190).

IV. The court may dispense with the bond on this appeal. The chancellor could have done so under the old practice. (Burns *v.* Morse, 6 *Paige*, 108; *Laws of* 1847, *ch.* 280, § 16; *Blatchford's Gen. Stats.*, 331; 2 *Paige*, 374).

V. The failure to give the bond was a mere irregularity, and the notice did not specify it. It was improper to set it aside for that reason, upon this notice. (*Rule* 25).

*C. H. Doolittle,* for respondent.

PRATT, J.—The injunction in this case did not restrain prosecution of the suit in behalf of Hurlburt, nor did it restrain the receiver in that suit from disposing of the property, collecting the debts, and settling up the affairs of the corporation. It simply restrains the creditors of the corporation from proceeding at law. The purpose of this action ostensibly is to ascertain and enforce the liability of the officers and stockholders of the corporation and to wind up its entire affairs, under the direction of this court and through the instrumentality of a receiver, either by the one already appointed in Hurlburt's suit, or by one whom the court may appoint in this action.

As an incident to an equitable distribution of the assets among all the legal creditors of the corporation, some of the judgments heretofore recovered against the corporation, and now owned by Hurlburt, are alleged to be fraudulent and void, and it is insisted that they should be set aside; still the main scope and purpose of the action seem to be as before stated.

An injunction to stay the proceedings in actions at law against the corporation is expressly given by statute.

The 56th section of the Articles of the Revised Statutes— "Of proceedings against corporations in equity," provides that "whenever any bill shall be filed, or any application made, against any corporation, its directors, or other superintending officers, or its stockholders, according to the provisions of this title, the court may, by injunction, on the application of either party, and at any stage of the proceedings, restrain all proceedings at law by any creditor against the defendants in such suit." (2 *Rev. Stats.*, 466). This, I apprehend, is an independent provision of the statute, and not at all subject to those general provisions of the statute, in regard to the injunction to restrain proceedings in actions at law, and which require a bond to be executed, or a deposit to be made, before an injunction can be obtained.

The proceeding is not necessarily in hostility to the proceedings at law, but on the contrary it is instituted for the purpose of applying the assets of the corporation, including the liability of the officers and stockholders, to the payment and satisfaction of all the legal demands against it.   This can be accomplished in most cases much more speedily and equitably in an action, through the instrumentality of a receiver, than by separate actions in behalf of each creditor.   The receiver can sell the property absolutely, and is empowered to give the proper conveyances for the real estate immediately, and is not bound to wait for the time for redemption to elapse.   The statute, therefore, has made provisions for what the Court of Chancery, in the exercise of its equitable powers, had previously assumed jurisdiction over, and has provided for granting an injunction, in order that its purposes may not be defeated by numerous actions at law by separate creditors of the insolvent or failing corporation.   But if the amount of all judgments which may

have been recovered, must be deposited or an undertaking for their payment must be given, to entitle a creditor or stockholder to the right to an injunction under that section, the benefit designed by the act would be very much impaired, if not rendered practically unavailing.

Such, I am quite confident, was not the design of the statute, and the injunction, therefore, should not have been dissolved for the reasons assigned by the learned judge at special term. It was argued with a good deal of force upon that argument, that as the granting of a temporary injunction was a matter of discretion for the court, the exigencies of this case did not require one; that the plaintiff's demand was small and insignificant, compared with the amount of the judgments proposed to be stayed, and that as the defendant Hurlburt was amply responsible for any judgment which the plaintiff might recover, the injunction should not have been granted. There might be some force in this position, had not the defendant Hurlburt himself instituted a suit under the same provision of the statute, procured an injunction staying proceedings at law by the creditors of the corporation, and procured the appointment of a receiver, in whose hands the property and effects of the corporation now are. As the proceedings in that suit were not stayed by this injunction in this suit, he can suffer no detriment by it. He clearly would have no right after obtaining the injunction in this suit, to proceed at law to sell the property. He is as effectually stayed by the injunction in his suit as any other creditor. He clearly would have no right to stay proceedings at law by other creditors and proceed at law himself.

The object of the statute is to make an equal and ratable distribution of the property of the company among all the creditors. And although when judgments have been recovered before the commencement of proceedings in equity, they will of course be entitled to priority so far as the real estate is concerned, still if an injunction procured by the plaintiff in the equitable action will not stay him from proceeding at law after judgment, it would not stay him before judgment, and he might therefore commence proceedings and procure an injunction for the express purpose of enabling him to stay other cre-

ditors while he should proceed to judgment, and by that me-
thod gain a priority of lien.   The statute manifestly contains
no provisions for defeating the objects and purposes of its
enactment in this manner.   The case shows, therefore, that
Hurlburt by his own proceedings is restrained from proceed-
ing under his judgments to sell the property of the corpora-
tion, and he cannot therefore be injured by allowing this
injunction to stand.

I think, therefore, that the injunction ought not to have
been dissolved, and that the order made at special term dis-
solving it should be reversed, but without costs.